**RECORD NO. 11-3148**

In The

# United States Court of Appeals

### For The Third Circuit

## ROBERT A. MARIOTTI, SR.,

*Plaintiff – Appellant,*

**v.**

## MARIOTTI BUILDING PRODUCTS, INC.,

*Defendant – Appellee.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

———————

## REPLY BRIEF OF APPELLANT

———————

Thomas H. Roberts
THOMAS H. ROBERTS & ASSOCIATES, P.C.
105 South First Street
Richmond, Virginia 23219
(804) 783-2000

Clifford B. Cohn
ATTORNEY AT LAW
Public Ledger Building
620 Chestnut Street, Suite 925
Philadelphia, Pennsylvania 19106
(215) 545-9660

Jeffrey J. Malak
CHARITON, SCHWAGER & MALAK
138 South Main Street
Wilkes-Barre, Pennsylvania 18703
(570) 824-3511

*Counsel for Appellant*           *Counsel for Appellant*           *Counsel for Appellant*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

STANDARD OF REVIEW .............................................................................. 1

ARGUMENT AND AUTHORITIES ................................................................. 2

I.    MBP's statement of facts misconstrues the well-pled allegations in the Amended Complaint, improperly introduces suspect material not pled in the Amended Complaint, and fails to take the facts in the light most favorable to Mariotti ................................... 2

    1.    The Court may not consider the non-authenticated shareholder agreement, which was not the basis of Mariotti's claims ....................................................... 2

    2.    Additional errors in MBP's statement of fact ............................ 4

II.    MBP errs in its application of the <u>Clackamas</u> factors on this Rule 12(b)(6) motion ........................................................... 9

    1.    The first <u>Clackamas</u> factor ........................................ 9

    2.    The second <u>Clackamas</u> factor .................................. 11

    3.    The third <u>Clackamas</u> factor .................................... 12

    4.    The fourth <u>Clackamas</u> factor .................................. 13

    5.    The fifth <u>Clackamas</u> factor ..................................... 14

    6.    The sixth <u>Clackamas</u> factor .................................... 15

III.    The six factors articulated in <u>Clackamas</u> are not exhaustive, and looking at all of the incidents of the relationship, Mariotti has stated sufficient facts for a Rule 12(b)(6) motion to show that he is an employee, not an employer, under Title VII ......................... 16

1.     Additional incidents of Mariotti's relationship with MBP.......16

2.     Five additional factors this Court should consider ...................20

IV.    MBP erroneously argues that this Court may only consider the specific remarks cited in the Amended Complaint in support of Mariotti's hostile work environment claim.........................................22

CONCLUSION...........................................................................................28

CERTIFICATE OF BAR MEMBERSHIP................................................30

CERTIFICATE OF COMPLIANCE
AND VIRUS SCAN CERTIFICATION...................................................31

CERTIFICATE OF SERVICE ................................................................33

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

<u>AMTRAK v. Morgan</u>,
    536 U.S. 101 (U.S. 2002) ...............................................................28

<u>Ashcroft v. Iqbal</u>,
    556 U.S. 662 (2009)......................................................................23

<u>Bell Atl. Corp. v. Twombly</u>,
    550 U.S. 544 (2007).......................................................................1

<u>Chavero v. Local 241, Division of Amalgamated Transit Union</u>,
    787 F.2d 1154 (7th Cir. 1986) ...........................................19, 20, 21

<u>Clackamas Gastroenterology Assocs., P.C. v. Wells</u>,
    538 U.S. 440 (2003)...............................................................<u>passim</u>

<u>Clark County Sch. Dist. v. Breeden</u>,
    532 U.S. 268 (2001)......................................................................26

<u>EEOC v. Johnson & Higgins, Inc.</u>,
    91 F.3d 1529 (2d Cir. 1996) .........................................................19

<u>Faragher v. City of Boca Raton</u>,
    524 U.S. 775 (1998)......................................................................26

<u>Fleisher v. Std. Ins. Co.</u>,
    679 F.3d 116 (3d Cir. 2012) ....................................................1, 24

<u>Fowler v. UPMC Shadyside</u>,
    578 F.3d 203, 210 (3rd Cir. 2009)................................................23

<u>Guirguis v. Movers Specialty Servs.</u>,
    346 Fed. Appx. 774 (3d Cir. 2009) .........................................1, 24

Kern v. City of Rochester,
    93 F.3d 38 (2d Cir. 1996) ................................................................................19

Kirleis v. Dickie, McCamey & Chilcote, P.C.,
    2010 U.S. App. LEXIS 14530 (3d Cir. 2010) ................................................17

Lattanzio v. Security Nat'l Bank,
    825 F. Supp. 86 (E.D. Pa. 1993) ......................................................19, 20, 21

Mayer v. Belichick,
    605 F.3d 223 (3d Cir. 2010) ...................................................................passim

Nationwide Mut. Ins. Co. v. Darden,
    503 U.S. 318 (1992).......................................................................................16, 19

O'Connor v. City of Newark,
    440 F.3d 125 (3d Cir. 2006) ..........................................................................28

Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,
    998 F.2d 1192 (3d Cir. 1993) .......................................................................3, 4

Prather v. Prudential Fox & Roach,
    326 Fed. Appx. 670 (3d Cir. 2009) ...............................................................21

Serapion v. Martinez,
    119 F.3d 982 (1st Cir. 1997)...........................................................................18

Smith v. Castaways Family Diner,
    453 F.3d 971 (7th Cir. 2006) ........................................................................21

Tayar v. Camelback Ski Corp.,
    47 A.3d 1190 (Pa. 2012)...............................................................................19

Trainor v. Apollo Metal Specialties, Inc.,
    318 F.3d 976 (10th Cir. 2002) ......................................................................19

Ziegler v. Anesthesia Assocs. of Lancaster, Ltd.,
    74 Fed. Appx. 197 (3d Cir. 2003) ....................................................17, 18, 20

## **FEDERAL STATUTES**

42 U.S.C. § 2000e(b) ...................................................................18, 19, 20

42 U.S.C. § 2000e(f) .........................................................................18

## **STATE STATUTES**

15 Pa. C.S. § 1502(16) ...................................................................11, 21

15 Pa. C.S. § 1526...........................................................................15

15 Pa. C.S. § 1712...........................................................................15

15 Pa. C.S. § 1713...........................................................................15

15 Pa. C.S. § 1728...........................................................................13

## **RULE**

Fed. R. App. P. 12(b)(6).................................................................passim

**STANDARD OF REVIEW**

The Circuit Court reviews the grant of a Rule 12(b)(6) motion *de novo*. Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010).  The Court must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint. Id. The court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents. Id. at 230.

"To avoid dismissal, a complaint must set forth facts that raise a plausible inference that the defendant inflicted a legally cognizable harm upon the plaintiff." Guirguis v. Movers Specialty Servs., 346 Fed. Appx. 774, 776 (3d Cir. 2009). Put another way, the complaint must plead sufficient factual allegations to raise a right to relief above the speculative level. Mayer, 605 F.3d at 229. If a complaint adequately states a claim, it may not be dismissed based on a court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder. Fleisher v. Std. Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007).

## ARGUMENT AND AUTHORITIES

**I.    MBP's statement of facts misconstrues the well-pled allegations in the Amended Complaint, improperly introduces suspect material not pled in the Amended Complaint, and fails to take the facts in the light most favorable to Mariotti.**

It constructing its "Statement of Facts," Appellee Mariotti Building Products ("MBP") ignores the well-established and undisputed rule that in reviewing the grant of a Rule 12(b)(6) motion, this Court is to accept as true all the allegations in the Amended Complaint and all reasonable inferences that can be drawn therefrom, and these allegations and inferences are to be viewed in the light most favorable to the nonmoving party. Mayer, 605 F.3d at 229. MBP goes even further by improperly introducing suspect materials in its statement of facts, referencing and relying on a non-authenticated and suspect document that it represents as the shareholder agreement merely referenced by Mariotti in his Amended Complaint. (Appellee Brief at 7-10 and n.1, 20, 32). Finally, MBP misrepresents the allegations of the Amended Complaint.

**1.    The Court may not consider the non-authenticated shareholder agreement, which was not the basis of Mariotti's claims.**

Taking the issues in the order they appear in MBP's statement of fact, Appellant Robert A. Mariotti, Sr. ("Mariotti") must first address MBP's references to the alleged shareholder agreement. (Appellee Brief at 7-10 and n.1, 20, 32).

MBP asserts that the District Court could properly consider the alleged shareholder agreement MBP provided to the District Court in its pleadings, because the agreement was "referenced in but not attached to the Amended Complaint." (Appellant's Brief at 7 n.1). In support of this proposition, MBP cites Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Pension Benefit, however, held as follows:

> We previously left open whether a court may properly consider a concededly authentic document upon which the complaint is based when the defendant attaches such a document to its motion to dismiss. We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.

Id. (citations omitted).

In this case, it is neither conceded nor clear that the alleged shareholder agreement provided by MBP as Exhibit A (App. 327-38) in its Motion to Dismiss Plaintiff's Amended Complaint is authentic, and more importantly the employment discrimination claims are not based on this or any shareholder agreement. Notably, page 12 of the document (App. 338) contains the signature of "Gregory J. Mariotti" as a shareholder, though he is not listed among the shareholders in pages 1 and 2 of the same document (App. 327-28).[1] This alone calls into serious question the authenticity of the document. Moreover, MBP cannot reasonably

---

[1] Gregory J. Mariotti was not a shareholder on July 23, 2007, when the document purporting to be the shareholder agreement was allegedly signed. Gregory J. Mariotti became a shareholder January 1, 2008.

argue that Mariotti's Title VII claims are "based on" this alleged shareholder agreement, as required under <u>Pension Benefit</u>. While certain provisions of the alleged shareholder agreement would support the allegations in the Amended Complaint that Mariotti was an employee and not an employer,[2] Mariotti's employment discrimination claim is not "based on" the shareholder agreement.

### 2.    Additional errors in MBP's statement of fact.

Looking at MBP's other errors in its statement of facts, MBP overstates Mariotti's alleged role in MBP. Insofar as these facts concern Mariotti's standing to file this action (i.e., whether he is an employer or an employee under Title VII), Mariotti is entitled to have them reviewed in the light most favorable to him at this stage in the litigation. <u>Mayer</u>, 605 F.3d at 229.

For instance, MBP asserts that Mariotti "shaped the business and management structure" (citing App. 155 ¶¶ 7-10),[3] and it later asserts that Mariotti "shaped corporate operations." (Appellee's Brief at 8, 13). Simply put, one person

---

[2] Compare, e.g., App. 329 ¶ 1.04 (Ex. A of Def. Mot. to Dism. Amend. Compl.) ("All children and grandchildren of original shareholders shall have an opportunity to become employed by the Corporation and such employment shall not be unreasonably withheld."), and App. 43-44, ¶ 102-103 (Amend. Compl.) (alleging that Mariotti and his brothers were not "at-will" employees but had an agreement that they could only be terminated for cause, and this right of employment was subsequently extended to their children and grandchildren). <u>See also</u> Appellant's Brief at 33-34 (discussing these allegations in relation to the fifth <u>Clackamas</u> factor). The document is relevant to Mariotti's state claims related to wrongful constructive discharge. But even there, the claim is not *based* on the document.

[3] All of the citations to the Appendix that follow are citations to Plaintiff's Amended Complaint, file March 7, 2012, appearing at App. 152-79.

alone cannot "shape" the business, management structure, or operations of a Pennsylvania corporation. This is the work of the Board of Directors. The cited paragraphs in fact state in relevant part that Mariotti and his brothers joined the company in the 1960s, the company grew substantially in sales and reputation over forty years, and that Mariotti was responsible for developing and growing several areas of MBP's business, including training the staff to take over day-to-day management of various divisions. (App. 155 ¶¶ 7-10). While it is certainly *possible* that Mariotti *helped* to "shape[] the business and management structure" and "shape[] corporate operations" in the course of managing and growing various divisions of the company, this would be an improper inference to draw at this stage in the proceedings. Similarly, MBP asserts Mariotti claims to have built the business himself (Appellee's Brief at 8), when in fact Mariotti expressly notes the role of his brothers in building the business and the subsequent cooperation of his other family members. (App. 156 ¶¶ 9, 12, 16-17).

MBP also fabricates the claims that Mariotti "named individuals to key posts at MBP" and "allegedly anointed his son,[4] Paul Mariotti, as his successor in the lumber division." (Appellant's Brief at 8). While the Amended Complaint acknowledges that Mariotti trained various staff, including his son, to assume

_____

[4] This pseudo-religious language of "anointing," now adopted by MBP's counsel, is characteristic of some of the mockery Mariotti routinely endured for his religious beliefs while employed at MBP.

5

management roles, it is devoid of any suggestion that he was responsible or solely responsible for deciding who ought to be trained for such roles.

MBP asserts that "as a shareholder, director and officer, Mr. Mariotti had the ability to exert substantial influence over MBP." (Appellant's Brief at 10). This inference that Mariotti had substantial influence over MBP is rebutted by the allegations, which are to be taken as true, that Mariotti was regularly excluded from important decisions of MBP, that MBP's other shareholders called a shareholder meeting without any notice to Mariotti and unanimously determined to terminate his employment with MBP because of his religious beliefs as expressed in his eulogy. (App. 163 ¶ 41, 165 ¶ 53). As such, this inference is improper when the allegations are viewed in the light most favorable to the non-moving party. Mayer, 605 F.3d at 229.

MBP also asserts, "Like the other members of the Mariotti family who own and manage the family business, Mr. Mariotti is Catholic." (Appellee's Brief at 10). This ignores the well-pled allegation that Mariotti left the Roman Catholic Church his family members attended, joining the Byzantine Catholic Church. (App. 158 ¶ 22). The differences between the Roman and Byzantine rites of the Catholic Church is not specifically pled in this complaint, but this Court would be wrong to assume on this Rule 12(b)(6) motion that such differences cannot be the basis of employment discrimination. Additionally, the statements made by Eugene

6

L. Mariotti, Sr., the President of MBP, that "Mary was not a virgin," "The Eucharist is only a symbol," and "You left our church," show significant differences of religious belief. (App. 160 ¶ 35). Similarly, the statements of Louis C. Mariotti indicating that Mariotti is involved in a "cult" and that Jesus Christ was an "exhibitionist" show significant differences of religious belief. (App. 159-160 ¶¶ 28-29, 31, 35).

Likewise, MBP misconstrues the well-pled allegations about the severity and pervasiveness of the hostile and derogatory remarks. Whereas the Amended Complaint describes plausible "pattern of antagonism" including negative, hostile, and humiliating statements directed against Mariotti concerning his religious affiliation (App. 158 ¶ 24)—supported with numerous concrete instances of derogatory comments by Louis C. Mariotti, Louis C. Mariotti, Jr, MBP employee Dave Carey, and other employees of MBP (App. 158-60 ¶¶ 25-36)—MBP describes only "occasional teasing remarks." (Appellee's Brief at 10).

MBP similarly mischaracterizes the nature of Mariotti's eulogy of his father. It asserts that Mariotti narcissistically "lavished praise upon himself," quoting the following passage but leaving out the text appearing in **bold** so as to deprive it of the religious connotations:

> [T]he greatest contribution my father Louis gave to this life **that I can personally speak for** is my own life **and all that he taught me, and**

> **all that he gave me to help me be the kind of person God wants me to be**."

(Appellee Brief at 11 (emphasis added); App. 161 ¶ 37c).

MBP argues in its "Statement of Fact" that Mariotti "is unable to identify a single statement in the eulogy that conflicts with the Catholic faith that he shares with the other members of his family." (Appellee Brief at 11). This implies, without authority, that individuals *asserting* allegiance to a particular faith tradition are incapable under Title VII of discriminating against another person that *sincerely believes* the tenants of that faith. It also fails to take the facts in the light most favorable to Mariotti and improperly calls into question the truth of the well-pled allegations on the Rule 12(b)(6) motion. Moreover, this eulogy stands in striking contrast to the unorthodox statements of Eugene and Louis. (App. 159-160 ¶¶ 28-29, 31, 35).

MBP also asserts improperly in its "Statement of Facts" that "Mr. Mariotti . . . presumably is not seeking any relief following [October 2009]." As stated in the Amended Complaint, Mariotti is seeking

> compensatory and punitive damages, as may be set by the jury and court, for past and future lost compensation, benefits, pain, suffering, humiliation, damage to reputation and community stature, lost savings, pre and post judgment interest, increased award for consequences of lump sum recovery, together with attorneys fees and costs, and declaratory relief that the action of MBP shareholders and/or directors of January 8, 2009, and the notification of January 10,

2009, was ultra vires and such other and further relief including equitable relief as the court deems appropriate. (App. 176-77).

This issue is also irrelevant on a Rule 12(b)(6) motion.

## II.    MBP errs in its application of the <u>Clackamas</u> factors on this Rule 12(b)(6) motion.

MBP misinterprets the six factors articulated in <u>Clackamas Gastroenterology Assocs., P.C. v. Wells</u>, 538 U.S. 440, 450 (2003) very artfully to reach the conclusion that Mr. Mariotti was not an employee of MBP.

### 1.    The first <u>Clackamas</u> factor.

The first <u>Clackamas</u> factor is "Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work." <u>Id.</u> MBP looks only at the second part of this factor, arguing that MBP sets no rules governing Mariotti's work because Mariotti "established company rules and regulations and made decisions concerning operations, business development and employee succession. (App. 156 ¶¶ 13, 14 (Am. Compl.).)" (Appellee's Brief at 26-27).

This completely ignores the focus of this factor, namely whether *MBP* could hire or fire *Mariotti* and how *Mariotti's* work was governed, not the role Mariotti had in managing employees placed under his supervision. Just because Mariotti was a board member and a manager of divisions with employees beneath him does not mean that MBP could not also regulate Mariotti's work.

The Amended Complaint alleges that Mariotti "joined" the family business years ago when his father operated the company. (App. 155 ¶ 7). This implies that MBP *hired* Mariotti within the meaning of this <u>Clackamas</u> factor. Additionally, there is no reason to believe that MBP could not hire a new employee and place him in the same management position within MBP that Mariotti held, and even appoint him to the board of directors.

Additionally, the Amended Complaint asserts, "MBP had the power to, and in fact did or did attempt to, *terminate* Robert A. Mariotti, Sr." (App. 165 ¶ 51 (emphasis added)). In other words, MBP could *fire* Mariotti. It is abundantly clear as well that MBP *believed* it could terminate Mariotti's employment. The letter of January 10, 2009, states in relevant part, "The purpose of the [January 8, 2009] meeting was to discuss your future status as an **employee** of Mariotti building Products . . . . [B]y unanimous vote we have decided to **terminate your employment** with Mariotti Building Products effective immediately." (App. 163 ¶ 41 (emphasis added and removed)).

Concerning "[w]hether the organization can . . . set the rules and regulations of the individual's work," the description of Mariotti as an "employee" in the words of the MBP's letter of January 10, 2009 can hardly suggest otherwise. (App. 163 ¶ 41). Additionally, the Amended Complaint specifically states, "Robert A. Mariotti, Sr., reported to his brother, Eugene, and to the Board of directors." (App.

165 ¶ 52). Mariotti can hardly "report" to his brother Eugene unless his brother

Eugene had some authority to "set the rules and regulations of the individual's

work."

Additionally, 15 Pa. C.S. § 1502(16) should be conclusive in this respect. It

dictates:

> Subject to the limitations and restrictions imposed by statute or
> contained in its articles, every business corporation shall have power:
> . . . .
> (16) To elect or appoint and remove officers, employees and agents of
> the corporation, define their duties, fix their compensation and the
> compensation of directors, to lend any of the foregoing money and
> credit and to pay bonuses or other additional compensation to any of
> the foregoing for past services.

There has been no allegation that this statutory right of MBP to hire and fire

Mariotti, to define Mariotti's duties, and to regulate Mariotti in the performance of

those duties has been *abolished* by MBP, even if he could only be terminated for

cause. (App. 174 ¶ 102). As such, on this Rule 12(b)(6) motion, this factor weighs

in Mariotti's favor.

### 2.    The second <u>Clackamas</u> factor.

The second <u>Clackamas</u> factor is "[w]hether and, if so, to what extent the

organization supervises the individual's work." <u>Clackamas</u>, 538 U.S. at 450.

The record in this respect is underdeveloped. As stated, Mariotti "reports" to

his brother Eugene and to the Board of Directors. (App. 165 ¶ 52). Additionally,

MBP described Mariotti as an "employee." (App. 163 ¶ 41). Moreover, Mariotti

"held only a minority interest in the company, had no veto power over MBP or its decisions, and was regularly excluded from important decisions in MBP." (App. 165 ¶ 53). All reasonable inferences that may be drawn from these allegations must be drawn in the light most favorable to Mariotti. To assert, as MBP does, that "report" cannot mean "supervise" is to violate this standard of review. (Appellee's Brief at 23).

Again, it is clear that Mariotti historically had a substantial role in the management of various divisions of the company's, but this does not preclude MBP from supervising his work in that management role. Contrary to MBP's claim, there was no allegation made that Mariotti "selected" the individuals who managed MBP's business divisions. (Appellee's Brief at 27; App. 155 ¶ 12).

### 3.    The third <u>Clackamas</u> factor.

The third <u>Clackamas</u> factor is "Whether the individual reports to someone higher in the organization." <u>Clackamas</u>, 538 U.S. at 450. Mariotti specifically alleges that he reports to his brother and to the board of directors. (App. 165 ¶ 52).

MBP asserts that because Mariotti "only" reports to the board of directors and the president of the company, and was an elected member of the board of directors, he really reports to himself alone. (Appellee's Brief at 28). This ignores

the well-established law in Pennsylvania concerning conflicts of interest involving

the board of directors. See, e.g., 15 Pa. C.S. § 1728.[5]

### 4.    The fourth <u>Clackamas</u> factor.

The fourth <u>Clackamas</u> factor looks to "[w]hether and, if so, to what extent

the individual is able to influence the organization." <u>Clackamas</u>, 538 U.S. at 450.

---

[5] § 1728. Interested directors or officers; quorum.

(a) General rule.--A contract or transaction between a business corporation and one or more of its directors or officers or between a business corporation and another domestic or foreign corporation for profit or not-for-profit, partnership, joint venture, trust or other enterprise in which one or more of its directors or officers are directors or officers or have a financial or other interest, shall not be void or voidable solely for that reason, or solely because the director or officer is present at or participates in the meeting of the board of directors that authorizes the contract or transaction, or solely because his or their votes are counted for that purpose, if:

(1) the material facts as to the relationship or interest and as to the contract or transaction are disclosed or are known to the board of directors and the board authorizes the contract or transaction by the affirmative votes of a majority of the disinterested directors even though the disinterested directors are less than a quorum;

(2) the material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the shareholders entitled to vote thereon and the contract or transaction is specifically approved in good faith by vote of those shareholders; or

(3) the contract or transaction is fair as to the corporation as of the time it is authorized, approved or ratified by the board of directors or the shareholders.

(b) Quorum.--Common or interested directors may be counted in determining the presence of a quorum at a meeting of the board that authorizes a contract or transaction specified in subsection (a).

(c) Applicability.--The provisions of this section shall be applicable except as otherwise restricted in the bylaws.

Though Mariotti has influenced the organization over forty years of service as a manager of corporate divisions, and has had a positive impact on MBP through his services, the extent of his influence concerning the direction and decisions of MBP as compared with the influence of the other shareholders, directors, officers, and employees was not substantially discussed in the Amended Complaint. Mariotti alleges, however, that "[h]e held only a minority interest in the company, had no veto power over MBP or its decisions, and was regularly excluded from important decisions in MBP." (App. 165 ¶ 53). This is to be taken as true.

The fact that MBP felt it acceptable to hold a meeting of the Shareholders to discuss and terminate Mariotti's employment with MBP without notice to him, and that the decision to terminate him was otherwise unanimous, shows that he can hardly be considered to have such a significant influence over the organization to make him an employer. (App. 163 ¶ 41).

### 5.    The fifth **Clackamas** factor.

The fifth Clackamas factor looks to the intent of the parties: "Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts." Clackamas, 538 U.S. at 450.

It is alleged that Mariotti has a right to be terminated only for cause based on a prior implied or express oral employment agreement or understanding. (App. 174

¶ 102). MBP argues that this is not relevant, because it is not written. (Appellee's Brief at 32). This ignores the thrust of this factor, which concerns more the intent of the parties. That intent is further manifest in the written letter of January 10, 2009, stating that Mariotti's *employment* is terminated. (App. 163 ¶ 41).

Additionally, the absence of writtin employment agreements does not weigh in MBP's favor, as asserted. (Appellee's Brief at 32). If anything, the absence of a written agreement is simply neutral to the analysis because no intent is expressed one way or the other.

### 6.    The sixth <u>Clackamas</u> factor.

The final <u>Clackamas</u> factor considers "[w]hether the individual shares in the profits, losses, and liabilities of the organization." <u>Clackamas</u>, 538 U.S. at 450.

MBP would like to limit this issue to profits. It addresses that factor alone, relying on materials improperly introduced into the records. (Appellee's Brief at 32). <u>Clackamas</u>, however, looks at the all of the incidents of the relationship, <u>id.</u> at 451, and specifically at the share in the losses and liabilities. Simply put, because MBP is a non-professional business corporation, Mariotti has limited liability for the debts and liabilities of the company and no personal professional liability. 15 Pa. C.S. §§ 1526, 1712-1713. As a sub-S corporation, the taxes consequences of annual profits and losses are passed through to each of the shareholders of MBP, but Mariotti is not personally liable for any of these losses or liabilities. Further, he

only shares in profits and losses to the extent the shareholders elect to distribute those profits.

In light of all the foregoing, it was error for the District Court to dismiss this case on MBP's Rule 12(b)(6) motion, as Mariotti had stated facts sufficient to support a claim that he was an employee of MBP, not an employer, as those terms are used under Title VII.

### III.    The six factors articulated in <u>Clackamas</u> are not exhaustive, and looking at all of the incidents of the relationship, Mariotti has stated sufficient facts for a Rule 12(b)(6) motion to show that he is an employee, not an employer, under Title VII.

As the Supreme Court made clear in <u>Clackamas</u>, the six factors enunciated in that opinion are not to be treated as exhaustive. <u>Clackamas</u>, 538 U.S. at 450 n.10. "The answer to whether a shareholder-director is an employee or an employer cannot be decided in every case by a shorthand formula or magic phrase." <u>Id.</u> (internal quotation marks omitted) (quoting <u>Nationwide Mut. Ins. Co. v. Darden</u>, 503 U.S. 318, 324 (1992)). "[T]he answer to whether a shareholder-director is an employee depends on all of the incidents of the relationship . . . with no one factor being decisive." <u>Id.</u> at 451 (internal quotation marks omitted) (quoting <u>Darden</u>, 503 U.S. at 324).

### 1.    Additional incidents of Mariotti's relationship with MBP.

In this case there are certainly numerous additional incidents of Mariotti's relationship with MBP that ought to be examined by the Court before it passes

16

judgment as to Mariotti's status under Title VII. MBP does not deny that it is a non-professional business corporation with a different legal and functional relationship between itself and its shareholders, directors, and employees than what this Court has ever contemplated before in applying the Clackamas factors. The Third Circuit and the Supreme Court has applied the Clackamas test only to professional corporations, not to non-professional business corporations like MBP. Clackamas, 538 U.S. 440; Ziegler v. Anesthesia Assocs. of Lancaster, Ltd., 74 Fed. Appx. 197 (3d Cir. 2003); Kirleis v. Dickie, McCamey & Chilcote, P.C., 2010 U.S. App. LEXIS 14530 (3d Cir. 2010) (unpublished). It is clear that Mariotti is not "the person, or group of persons, who owns and manages the enterprise," even if he is one among many with a minority participation in those functions. Clackamas, 538 U.S. at 450.

MBP does not deny that Mariotti received W2s from MBP. (Appellee's Brief at 32). MBP does not deny that it sought to terminate Mariotti's *employment* with the company, targeting the benefits of and compensation for his *employment*, while distinguishing this from the incidents of Mariotti's role as a shareholder and director. (Appellee's Brief at 19). Specifically, the January 10, 2009 letter states that Mariotti's salary and other employment benefits will be terminated, while making it clear that he would still receive his draws as a shareholder. (App. 163 ¶ 41). In this letter, taken in the light most favorable to Mariotti, MBP confirms

and acknowledges that Mariotti is an "employee" of MBP, not merely a shareholder and director. This is overwhelming evidence supporting Mariotti's position.

Similarly, MBP cites to dicta in a footnote in this Court's <u>Ziegler</u> opinion (which dicta relies on one pre-<u>Clackamas</u> case) trying to overthrow the clear import of Title VII post-<u>Clackamas</u> that an individual can be an "employer" for certain purposes of Title VII and an "employee" for others. <u>Ziegler</u>, 74 Fed. Appx. at 199 n.4 (quoting <u>Serapion v. Martinez</u>, 119 F.3d 982, 985 (1st Cir. 1997)). As noted in Mariotti's opening brief (Appellant's Brief at19-24), Title VII defines "employer" as either (1) "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year," or (2) "any agent of such a person." 42 U.S.C. § 2000e(b). Under Title VII, an "employee" generally "means an individual employed by an employer." <u>Id.</u> § 2000e(f).

Employees *are* agents of the business entity while acting within the scope of their employment—a point <u>Clackamas</u> makes clear by analogizing the employer-employee relationship in Title VII with the master-servant agency relationship in common law. <u>Clackamas</u>, 538 U.S. at 445 ("[W]hen Congress has used the term 'employee' without defining it, . . . Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine."

(internal quotation marks omitted) (quoting <u>Darden</u>, 503 U.S. at 322-23)); <u>see also</u>, e.g., <u>Tayar v. Camelback Ski Corp.</u>, 47 A.3d 1190, 1195-97 (Pa. 2012) (discussing the vicarious liability of employers for the employees acting within the scope of their employment). Given the agency of employees, employees usually fall within the definitions of both "employees" and "employers" under Title VII.

Reading the employer-employee distinctions in Title VII as mutually exclusive categories, as MBP proposes (Appellee's Brief at 22), would make practically every individual an *employer* under Title VII, because they would be "agents" of the employer under 42 U.S.C. § 2000e(b). This reading would be absurd. The alternative reading—allowing agents of the business entity to be "employees" when they are in fact "employed" by the business entity, at least in instances where they are the *victims* of employment discrimination—would mean that Mariotti may be an employee of MBP even though he is also a shareholder and director. This reading is consistent with numerous pre-<u>Clackamas</u> cases addressing the issue,[6] and it is a necessary implication of <u>Clackamas</u>, which understands "employee" in the terms of common law agency doctrine. <u>Clackamas</u>, 538 U.S. at

---

[6] <u>See</u>, <u>e.g.</u>, <u>Trainor v. Apollo Metal Specialties, Inc.</u>, 318 F.3d 976 (10th Cir. 2002); <u>Kern v. City of Rochester</u>, 93 F.3d 38, 47 (2d Cir. 1996); <u>EEOC v. Johnson & Higgins, Inc.</u>, 91 F.3d 1529, 1538 (2d Cir. 1996); <u>Chavero v. Local 241, Division of Amalgamated Transit Union</u>, 787 F.2d 1154, 1157 (7th Cir. 1986); <u>Lattanzio v. Security Nat'l Bank</u>, 825 F. Supp. 86, 90 (E.D. Pa. 1993).

445. To the extent that the case relied upon in <u>Ziegler</u> indicates otherwise, it was abrogated by <u>Clackamas</u>.

**2.      Five additional factors this Court should consider.**

In light of this overlap between statutory employers under Title VII (which includes agents of the employers (42 U.S.C. § 2000e(b))) and the statutory employees under Title VII (which includes the agents *employed by* the employers (42 U.S.C. § 2000e(b))) and the other foregoing arguments, several additional factors emerge to guide the Court in it analysis of the employer-employee distinction under Title VII:

- What is the nature of the business entity at issue in the case? What are the legal rights of the business entity in relation to the person whose status is being determined?[7]

- Did the person whose status is being adjudicated undertake traditional employee duties, wherein he was subject to the control of the employer?[8] <u>Lattanzio v. Security Nat'l Bank</u>, 825 F. Supp. 86, 90 (E.D. Pa. 1993) (citing <u>Chavero v. Local 241, Division of the Amalgam Transit</u>, 787 F.2d 1154, 1157 (7th Cir. 1986) (per curiam)).

- Was the person whose status is being determined separately employed, such that he only had a limited role as a director or a

---

[7] See Appellant's Brief at 11 to 19.
[8] See Appellant's Brief at 19 to 22.

shareholder in the company?[9] <u>Lattanzio</u>, 825 F. Supp. at 90 (citing <u>Chavero</u>, 787 F.2d at 1157).

- Was the person whose status is being determined paid as an employee, or did he or she solely receive a share in the profits of the business?[10] <u>Cf.</u> <u>Prather v. Prudential Fox & Roach</u>, 326 Fed. Appx. 670, 672 (3d Cir. 2009).

- If the person whose status is being determined is the alleged victim of the discrimination, did that discrimination specifically target his or her employment status or employment benefits?[11]

Applying these additional factors to help elucidate "on all of the incidents of the relationship" between Mariotti and MBP and MBP's control over Mariotti clearly shows Mariotti to be an employee of MBP for purposes of this Title VII action. <u>Clackamas</u>, 538 U.S. at 450 n.10. MBP was a non-professional business corporation (App. 153¶ 2) with the powers to hire, fire, and supervise its agents, officers, and employees under the law. 15 Pa. C.S. § 1502(16). Mariotti undertook traditional duties of an employee, albeit a highly placed employee, <u>Smith v. Castaways Family Diner</u>, 453 F.3d 971, 979 (7th Cir. 2006). He ran various divisions of a large and highly successful regional supplier of building products,

---

[9] See Appellant's Brief at 22 to 23.
[10] See Appellant's Brief at 22 to 24.
[11] See Appellant's Brief at 22 to 26.

including growing those divisions, managing and training personnel under him, and training new managers to take his place when oversight of multiple division grew too much for a single employee in this growing company. (App. 155-56 ¶¶ 9-13). The Amended Complaint suggests that he was fully employed with MBP as the manager of the manufactured housing sales division at the time of his termination. (App. 155 ¶ 12). His role in the company was not limited to the duties of a shareholder and director. He was being paid separately as an employee, and his employment relationship with MBP was specifically targeted in the discrimination. (App. 163 ¶ 41). As the letter of January 10, 2009, states, the shareholders met to discuss Mariotti's future as an employee of MBP, and they decided to terminate his employment and consequential benefits. (App. 163 ¶ 41). The letter states he would continue to receive draws from MBP as a shareholder, and he in fact continued as a director to the end of his term. (App. 163 ¶ 41).

Given these additional incidents of the relationship between MBP and Mariotti, the was error for the Court to conclude on this Rule 12(b)(6) motion brought by MBP that Mariotti was not an employee of MBP under Title VII.

## IV.    MBP erroneously argues that this Court may only consider the specific remarks cited in the Amended Complaint in support of Mariotti's hostile work environment claim.

MBP attempts to convince this Court to uphold the District Court's erroneous grant of MBP's Rule 12(b)(6) motion on the grounds that Mariotti stated

too few specific remarks to establish a plausible hostile work environment claim. In doing so MBP misconstrues the standard of review and the law, misconstrues the nature and content of the allegations in the Amended Complaint, and misconstrues the scope of incidents this Court may consider in support of Mariotti's claim.

In applying the standard of review in its brief, MBP erroneously relies on this Court's decision in Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), in support of its proposition that this Court must consider the specific remarks mentioned in Mariotti's Amended Complaint as the *only* incidents supporting his claim. (Appellee's Brief at 33). Fowler merely reaffirmed that in a 12(b)(6) motion, the District Court determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. Pa. 2009) (internal quotation marks omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)).

Fowler does not negate the fact that the facts alleged in the Amended Complaint and all reasonable inferences therefrom are to be taken in the light most favorable to Mariotti. Mayer, 605 F.3d at 229. Fowler found that sufficient facts *were* alleged in the complaint, Fowler, 578 F.3d at 211, and this Court has clarified its holding in Fowler, stating, "To avoid dismissal, a complaint must set forth facts that raise a plausible ***inference*** that the defendant inflicted a legally cognizable

harm upon the plaintiff." <u>Guirguis v. Movers Specialty Servs.</u>, 346 Fed. Appx. 774, 776 (3d Cir. 2009) (emphasis added). In <u>Guirguis</u>, this Court specifically noted that an employment discrimination complaint may be satisfactory even where "the quantum of facts" in the complaint "may bear further development" <u>Id.</u> at 776 n.6. Similarly, this Court has recently affirmed that the claim may not be dismissed in on a Rule 12(b)(6) motion based on an "assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." <u>Fleisher v. Std. Ins. Co.</u>, 679 F.3d 116, 120 (3d Cir. 2012). The question is whether sufficient facts were alleged to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Mayer</u>, 605 F.3d at 229.

Mariotti's Amended Complaint states sufficient facts to support such a reasonable inference. Mariotti has alleged that he was a longtime employee of the family business, but until 1995, faith and religious practice was not an integral part of his life, being rather a "compartmentalized distraction." (App. 155-57 ¶¶ 7, 17). In July 1995, Mariotti experienced "what he described as a spiritual awakening, in which among other things God became personal to [Mariotti] and the center and purpose of his life." (App. 157 ¶¶ 18). This affected his religious practices, and he even transferred his church membership to the local Byzantine Catholic Church. (App. 157-58 ¶¶ 18, 23). Thereafter, Mariotti experienced "a systematic pattern of

antagonism towards" him from MBP and its officers and directors.[12] (App. 158 ¶ 24).

This pattern of discrimination included, for instance, being "frequently and regularly referred to" as "Reverend Bob" from 2000 to 2008. (App. 158 ¶ 25). This pattern included, for instance, Mariotti having his brother Louis C. Mariotti, also a shareholder-director of MBP, suggesting derogatorily that Mariotti had a "spiritual wife" on several occasions in Mariotti's hearing, suggesting that Mariotti was involved in a suicide cult akin to the infamous Jonestown cult of Jim Jones, and specifically stating that Mariotti was involved in a "cult" on multiple occasions in the presence of Mariotti. (App. 159-160 ¶¶ 27-29, 35). The same brother encouraged other employees to follow in his example of ridiculing Mariotti. (App. 159 ¶ 30). In the week leading up to MBP's attempt to terminate Mariotti, his brother Eugene (shareholder, director, and president of MBP) knowingly and willfully attacked Mariotti's religious beliefs, stating that the Blessed Virgin Mary was not a virgin, that the Eucharist is not the true Body and Blood of Jesus Christ but only a symbol, and asserting that Mariotti "left our church." (App. 160 ¶ 35).

---

[12] Mariotti notes that this allegation does not state a legal conclusion but rather a summary description of facts as he experienced them, which the following paragraphs of the Amended Complaint illustrated to demonstrate that the discrimination was indeed religiously motivated by reciting some of the specific incidents Mariotti experienced. As such, this summary description of the discrimination he experienced cannot be ignored as a legal conclusion and is to be taken as true in this Rule 12(b)(6) motion.

Just two days after delivering a eulogy for his father filled with religious references, the shareholders of MBP met without providing notice to Mariotti in violation of state law and established company rules and policies, and determined to terminate Mariotti's employment with MBP. (App. 160-63 ¶¶ 37-41). On January 10, 2009, Mariotti received a voicemail from his son, also a shareholder, stating, "[E]veryone is extremely upset over your remarks at granpa's funeral. I mean really upset." (App. 162 ¶ 40). The same day, MBP faxed the letter to Mariotti stating that he was terminated and that his employment benefits and salary was also terminated. (App. 163 ¶ 41).

These allegations and the inferences therefrom, when taken together in the light most favorable to Mariotti, are certainly sufficient to create a plausible or reasonable inference that the Mariotti suffered severe or pervasive harassment that effectively altered the terms and conditions of his employment. The statements used as illustrations were not mere offhanded comments, teasing remarks, or offensive utterances. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001) (distinguishing "offhanded commends" from comments that are humiliating); Faragher v. City of Boca Raton, 524 U.S. 775, 787-788 (1998) (same). Moreover, if these incidents alone were insufficient for the hostile work environment claim, then the attempt to terminate Mariotti's employment through an unlawfully held shareholder vote, followed by the letter of January 10, 2009 made it clear that

Mariotti was not welcome to return to MBP and that his salary and employment benefits were being terminated, including access to the MBP facilities, manifesting a hostile work environment altering the terms and conditions of his employment.

MBP attempts unpersuasively to separate this attempted termination of Mariotti's employment and the termination of his benefits and salary from the hostile work environment claim in two ways. First, they pretend that the attempted termination was lawful and effectual. (Appellee's Brief at 39 n.16). In fact the conduct at the meeting of the shareholder on January 8, 2009 was null and void, as it was in violation of state law and the MBP bylaws and other rules. (App. 166-68 ¶¶ 58-72). Additionally, this attempted termination was not effectual because Mariotti had the right to be terminated only for cause. (App. 174 ¶ 102). Instead MBP clearly communicated its intent to terminate Mariotti, because of his religious beliefs and practices. While this was not an effective or actual termination, it was certainly objectively and subjectively extreme and severe conduct pervasively altering the terms and conditions of Mariotti's employment, making it clear that he would not be welcome if he attempted to return to his employment duties. Second, MBP argues that the attempted termination was a "discrete act" and therefore not part of a hostile work environment claim. If the attempted termination was not unlawful, MBP's argument would be more persuasive. This distinction, however, is only relevant in determining whether

claims are time-barred. <u>AMTRAK v. Morgan</u>, 536 U.S. 101, 122 (U.S. 2002);

<u>O'Connor v. City of Newark</u>, 440 F.3d 125, 127 (3d Cir. 2006). MBP confuses

issue by misapplying the terminology.[13]

## CONCLUSION

For the foregoing reasons, this Court should deny the Defendant's Rule

12(b)(6) motion, reversing the District Court's order dismissing Claims I and II of

Plaintiff's Amended Complaint and remand this case for further proceedings.

Dated: October 31, 2012

Respectfully Submitted,

ROBERT A. MARIOTTI, SR.

By: <u>/s/ Thomas H. Roberts, Esq.</u>
Thomas H. Roberts, Esq. (PA # 312652)
tom.roberts@robertslaw.org
Thomas H. Roberts & Associates, P.C.
105 S 1st Street
Richmond, Virginia 23219
(804) 783-2000
(804) 783-2105 (fax)
Internet: www.robertslaw.org
*Lead Attorney for Plaintiff, Robert A. Mariotti, Sr.*

---

[13] While this Circuit has held based on <u>Morgan</u> that individually actionable incidents may not be aggregated to create a continuing violation so as to toll the statute of limitation, that is not the issue in this case. Here, the attempt to terminate Mariotti and the subsequent termination of his salary and benefits were the culmination of the component acts constituting the hostile work environment. As the Court stated in Morgan, "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." <u>Morgan</u>, 536 U.S. at 117.

Clifford B. Cohn, Esq. (PA # 25847)
cbcohn@cbcohn.com
925 Public Ledger Building
620 Chestnut Street
Philadelphia, PA 19106
215-545-9660
215-215-925-5991(fax)
*Attorney for Plaintiff, Robert A. Mariotti, Sr.*

Jeffrey J. Malak, Esquire
PA Supreme Court No. **86071**
E-mail: jjm@charitonschwager.com
CHARITON, SCHWAGER & MALAK
138 South Main St., P.O. Box 910
Wilkes-Barre, PA 18703-0910
Telephone: 570-824-3511
Facsimile: 570-824-3580
Internet: www.charitonschwager.com
*Attorney for Plaintiff, Robert A. Mariotti, Sr.*

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

I, Thomas H. Roberts, Esq., certify pursuant to Local Rule 46.1 that I am a

member in good standing of the bar of the United States Court of Appeals for the

Third Circuit.

Dated: October 31, 2012

By: <u>/s/ Thomas H. Roberts, Esq.</u>
THOMAS H. ROBERTS
Thomas H. Roberts, Esq. (PA # 312652)
tom.roberts@robertslaw.org
Thomas H. Roberts & Associates, P.C.
105 S 1st Street
Richmond, Virginia 23219
(804) 783-2000 / (804) 783-2105 (fax)
Internet: www.robertslaw.org
*Lead Attorney for Plaintiff, Robert A. Mariotti, Sr.*

Clifford B. Cohn, Esq. (PA # 25847)
cbcohn@cbcohn.com
925 Public Ledger Building
620 Chestnut Street
Philadelphia, PA 19106
215-545-9660 / 215-215-925-5991(fax)
*Attorney for Plaintiff, Robert A. Mariotti, Sr.*

Jeffrey J. Malak, Esquire
PA Supreme Court No. 86071
E-mail: jjm@charitonschwager.com
CHARITON, SCHWAGER & MALAK
138 South Main St., P.O. Box 910
Wilkes-Barre, PA 18703-0910
Telephone: 570-824-3511
Facsimile: 570-824-3580
Internet: www.charitonschwager.com
*Attorney for Plaintiff, Robert A. Mariotti, Sr.*

# CERTIFICATE OF COMPLIANCE AND
# VIRUS SCAN CERTIFICATION

I hereby certify as follows:

(1)    The foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because the brief has been prepared in proportionally spaced typeface using Microsoft Word 14 point Times New Roman font;

(2)    The foregoing brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 6,990 words, excluding those parts of the brief excluded by Fed. R. App. P. 32(a)(7)(B)(iii), as calculated using the word count function on Microsoft Word software;

(3)    The text of the electronic and hard copies of this brief are identical; and

(4)    The electronic copy of the foregoing brief was scanned for viruses on September 14, 2012, using Panda Global Protection 2012 and/or Symantec Endpoint Protection, Small Business Edition, version 12.0.1001.95., and no viruses were detected.

Dated: October 31, 2012

By: /s/ Thomas H. Roberts, Esq.
THOMAS H. ROBERTS
Thomas H. Roberts, Esq. (PA # 312652)
tom.roberts@robertslaw.org
Thomas H. Roberts & Associates, P.C.
105 S 1st Street
Richmond, Virginia 23219
(804) 783-2000 /(804) 783-2105 (fax)
Internet: www.robertslaw.org
*Lead Attorney for Plaintiff, Robert A. Mariotti, Sr.*

Clifford B. Cohn, Esq. (PA # 25847)
cbcohn@cbcohn.com
925 Public Ledger Building
620 Chestnut Street
Philadelphia, PA 19106
215-545-9660 / 215-215-925-5991(fax)
*Attorney for Plaintiff, Robert A. Mariotti, Sr.*

Jeffrey J. Malak, Esquire
PA Supreme Court No. 86071
E-mail: jjm@charitonschwager.com
CHARITON, SCHWAGER & MALAK
138 South Main St., P.O. Box 910
Wilkes-Barre, PA 18703-0910
Telephone: 570-824-3511
Facsimile: 570-824-3580
Internet: www.charitonschwager.com
*Attorney for Plaintiff, Robert A. Mariotti, Sr.*

## **CERTIFICATE OF SERVICE**

I certify that on October 31, 2012, I caused a copy of this Reply Brief for

Appellant Robert A. Mariotti to be filed with the Clerk of Court using the CM/ECF

system which will send notice of such filing to the following registered CM/ECF

user:

> Daniel T. Brier, Esq.
> Donna A. Walsh
> M. Jason Asbell
> MYERS BRIER & KELLY, LLP
> Suite 200, 425 Spruce Street
> Scranton, PA 18503
> Phone: (570) 342-6100
> Fax: (570) 342-6147
> *Attorneys for Defendant, Mariotti Building Products, Inc.*

Dated: October 31, 2012

> By: /s/ Thomas H. Roberts, Esq.
> THOMAS H. ROBERTS
> Thomas H. Roberts, Esq. (PA # 312652)
> tom.roberts@robertslaw.org
> Thomas H. Roberts & Associates, P.C.
> 105 S 1st Street
> Richmond, Virginia 23219
> (804) 783-2000
> (804) 783-2105 (fax)
> Internet: www.robertslaw.org
> *Lead Attorney for Plaintiff, Robert A. Mariotti, Sr.*